Frank Max MILLER, an individual, Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ROGERS, State of Oklahoma, et al., Defendants.

No. 97–C–990–C.

United States District Court, N.D. Oklahoma.

May 4, 1999.

---

Michele Lynn Schultz, District Attorney's Office, Claremore, OK, for Rogers County Board of County Commissioners, Rogers County, Don Morgan, Buck Johnson, Don Bordwine, defendants.

Deirdre O. Dexter, David H. Herrold, Conner & Winters, Tulsa, OK, for Yuba Heat Transfer, Luke Helm, defendants.

William Robert Grimm, Robert Bradley Sartin, Barrow Gaddis Griffith & Grimm, Tulsa, OK, for Stand–By of Oklahoma, Inc., a Colorado corporation, defendant.

## ORDER

COOK, Senior District Judge.

Pending before the Court are the motions for summary judgment filed by defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

On November 3, 1997, plaintiff, Frank Miller, filed the present action,[2] alleging numerous causes of action against defendants,[3] arising out of his arrest for felonious assault. Specifically, Miller alleges a civil rights violation under 42 U.S.C. § 1983,[4] and state law causes of action for false imprisonment and intentional infliction of emotional distress, against defendants, Don Morgan and Don Bordwine. Miller additionally alleges false arrest, malicious prosecution and intentional infliction of emotional distress against defendants, Yuba Heat Transfer and Luke Helm, and Miller alleges slander per se against Yuba.

In November 1998, Helm and Yuba filed their motion for summary judgment, and in December 1998, Bordwine and Morgan filed their separate motion for summary

Randy Rankin, Tulsa, OK, Sean Howard McKee, Woodstock McKee & McArtor, Tulsa, OK, for Frank Max Miller, an individual, plaintiff.

1. Defendants, Yuba Heat Transfer and Luke Helm, filed their motion for summary judgment on November 2, 1998, and defendants, Don Morgan and Don Bordwine, filed their motion on December 4, 1998.

2. Miller filed an amended Complaint on May 6, 1998.

3. The Court is advised that the following defendants have been dismissed from this action: Board of County Commissioners of Rogers County, Jerry Prather, in his official capacity as Sheriff of Rogers County, Stand–By of Oklahoma, Inc., and Buck Johnson. Thus, the only remaining defendants are Bordwine, Morgan, Helm and Yuba.

4. The § 1983 cause of action is the sole federal claim.

judgment. Also in December, Miller filed a belated request seeking permission to take the deposition of a key witness, Chester Fugate, and submit it for the Court's consideration. The Court granted Miller's request, and Fugate's deposition was subsequently noticed and filed. The Court set defendants' summary judgment motions for a hearing, which was held on April 19, 1999. At the conclusion of the hearing, the Court permitted the parties additional time in which to file designations and counter-designations from Fugate's deposition. All materials regarding defendants' motions for summary judgment have now been submitted, and the matter is ripe for ruling.

*Facts*

The following facts are related to Miller's § 1983 claim against Morgan and Bordwine and are undisputed. Prior to the incident giving rise to this action, Miller was an employee of Stand–By of Oklahoma, a temporary employment agency, and he was assigned to work at Yuba in October, 1996. Approximately one month later, Yuba terminated Miller's services on November 1, 1996.[5] In the early morning hours of November 3, 1996, Chester Fugate, a security guard employed by The Wackenhut Corporation and assigned to Yuba, was confronted by an unknown man. The man appeared intoxicated and agitated, and he began to verbally abuse Fugate. The man complained that Yuba took his job and destroyed him and his family. When Fugate turned the man away, he struck Fugate. Fugate fought his assailant, and the assailant fell. Fugate turned

and proceeded to his guard house to call the authorities when the assailant brandished a firearm and again threatened Fugate. While attempting to negotiate with the assailant, Fugate managed to secure himself inside his guard house and call the police. The assailant then left.

Officer Shane Reynolds, a deputy sheriff for Rogers County, and another deputy were the first responders to the scene. Reynolds met with Fugate and took his statement. Fugate informed Reynolds that the assailant was driving a small, red car, possibly a 280–Z. Fugate also reported to Reynolds that the assailant complained of recently being fired by Yuba and that he (the assailant) wanted to kill everyone working at Yuba. Fugate reported the attack and ensuing fight, and he advised that the assailant had threatened him with a weapon.[6]

Luke Helm, who is head of security for Yuba, was contacted by telephone following the incident. Fugate reported to Helm that he had been attacked by a former employee. Helm arrived at Yuba at approximately 6:00 a.m., and Fugate further advised Helm that the assailant was agitated because of being terminated by Yuba. Fugate also provided Yuba personnel with a description of the vehicle which the assailant drove. Yuba, acting through Helm, reported to the Rogers County Sheriff's Department on November 4, 1996, that Miller was the only person who had recently been terminated, that the vehicle the assailant drove matched Miller's,[7] and the physical de-

---

**5.** An affidavit filed by Miller's supervisor at Yuba cites unsatisfactory performance as the reason for Miller's termination.

**6.** The parties dispute whether Fugate provided a physical description of his assailant following the attack. Fugate testified in his deposition that he did provide a physical description to Reynolds and Helm, describing the man as between 6′ and 6′2″, slim, medium build, muscular chest, with shoulder-length, curly, sandy brown hair. However, Reynolds testified by affidavit that no physical description was provided to him. Fur-

ther, Helm testified by affidavit that Fugate described the assailant as 5′8″, and husky with a thick chest. Miller testified by affidavit that he is 5′8″, has short, dark brown, straight hair, and does not have a slender waist or muscular chest. He further testified that, at the time of his arrest, he had no cuts or bruises on his face. In any event, this factual dispute is not material to the Court's ruling on the § 1983 claim.

**7.** At the time of the incident, Miller was driving a red Datsun 280Z.

scription of the assailant also matched Miller.[8]

Don Morgan, a deputy sheriff for Rogers County, was assigned to investigate the case. Morgan met with Yuba personnel and received statements prepared by Fugate and Helm. Based on the information provided to him, along with the information provided by the deputies who had responded to Fugate's emergency call, it appeared to Morgan that Miller was the assailant. Morgan executed an affidavit for warrant for Miller's arrest, and presented it to Judge David Box, a special district judge for Rogers County. Upon finding probable cause to believe that Miller was the assailant, Judge Box issued a warrant for Miller's arrest. The warrant commanded the Sheriff to arrest Miller and bring him before Judge Box to answer the charge. Miller was arrested on Wednesday, November 6, 1996.

Following his arrest, on November 9, Miller's brother, Wayne Ford, approached Fugate at Yuba and presented a picture of Miller. After viewing the picture, Fugate advised Ford that Miller was not that assailant. Thereafter, Fugate and Ford went to the Rogers County Courthouse to notify the authorities that Miller had not attacked him. Fugate and Ford met Officer Don Bordwine in the parking lot of the courthouse. Because it was Sunday, they were told to return on a workday. The following Monday was a holiday, and Fugate was unable to speak with the authorities until Tuesday, November 12, at which time he met with the undersheriff.[9] The next day, Fugate spoke with Morgan, who promptly arranged a line-up. The line-up was conducted on that same day, and, although Miller was placed in the line-up,

Fugate did not identify him as the assailant.

Two days after the line-up was conducted, on Friday, November 15, a hearing was held before Judge Box.[10] Fugate testified, under oath, that Miller was not the man who had attacked him. The prosecutor asked Fugate whether his testimony was the result of a threat, coercion or a bribe. Fugate answered in the negative, maintained his insistence that Miller was not the assailant, and the prosecutor moved to dismiss the case. The judge ordered the case dismissed and Miller discharged. Miller was released.

### Standard of Review

In considering a motion for summary judgment, the Court "has no real discretion in determining whether to grant summary judgment." *U.S. v. Gammache*, 713 F.2d 588, 594 (10th Cir.1983). The Court must view the pleadings and documentary evidence in the light most favorable to the nonmovant, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 527–28 (10th Cir.1994), and summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir.1998). " '[T]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary

8. As noted, the physical description provided to Helm by Fugate is disputed.

9. The name of the undersheriff has not been provided.

10. Miller's counsel states that this was not a regularly scheduled criminal hearing. It appears that the hearing was held to test Fugate's assertions under oath and to determine

whether Miller was, in fact, the assailant. During the opening remarks to the court, the prosecutor stated that, "We have a case that's pending regarding Miller and I would like to put on some testimony before I ask the Court to dismiss it.... I would like to put Mr. Chester Fugate on the witness stand...." Based on these remarks, it is clear that the underlying purpose of the hearing was to have the case against Miller dismissed.

judgment.' " *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991) (quoting *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987)). However, once the moving party meets its burden, the burden then shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

### Discussion

The Court will first consider Morgan and Bordwine's motion for summary judgment. As noted, the § 1983 claim against them is the sole federal claim alleged in the Complaint. With respect to this claim, Morgan and Bordwine argue that they did not deprive Miller of any constitutional right. They contend that Miller's arrest and ensuing detention satisfied the requirements of the Fourth and Fourteenth Amendments, i.e., Miller was arrested pursuant to a constitutionally valid arrest warrant, and he was legally detained pursuant to that warrant. Morgan and Bordwine additionally assert a claim of qualified immunity and quasi-judicial immunity.[11] Miller counters that Helm and Yuba wrongfully, and without probable cause, reported to Rogers County officials that Miller had attacked Fugate. Miller argues that three days after his arrest, Fugate determined that Miller was not the assailant, and made this fact known to the appropriate officials, as well as Yuba. Miller contends that, even after being advised of his innocence by the victim, Morgan and Bordwine wrongfully continued to detain him for a period of five days. Thus, Miller argues that Morgan and Bordwine are liable under § 1983 because, after being informed of Miller's innocence, they failed to take prompt action to secure Miller's release.

Section 1983 imposes civil liability only upon one who, under color of law, subjects, or causes to be subjected, any person to the deprivation of any rights, privileges or immunities secured by the Constitution and laws. "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). To raise a constitutional claim, Miller must assert "that the defendants [1] acted under color of state law [2] to deprive him of a constitutional right." *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). *See also Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails). In the present case, there is no dispute that Morgan and Bordwine were acting under the color of state law in detaining Miller. The only issue, therefore, is whether Miller has been deprived of a right secured by the Constitution and laws. For the following reasons, the Court concludes that Morgan and Bordwine did not deprive Miller of his constitutional rights.

The undisputed facts reveal that Miller was arrested on November 6, 1996, pursuant to a valid warrant.[12] Fugate was first approached by Miller's brother on November 9, and determined, for the first time, that Miller was not the one who had attacked him. The next day, on Sunday, November 10, Fugate went to speak with

---

**11.** Because the Court is satisfied that Morgan and Bordwine did not deprive Miller of any constitutional right, the Court need not address their claims of qualified and quasi-judicial immunity.

**12.** Miller concedes that the arrest warrant was valid, and he makes no attack on the warrant.

Rogers County officials, and met with Bordwine in the parking lot of the courthouse. Fugate was told to return on a workday. However, the following Monday was a holiday, and Fugate was therefore unable to speak with any official until Tuesday, November 12. At that time, he spoke with the undersheriff of Rogers County. On Wednesday, November 13, Fugate returned to the Sheriff's Office, and spoke with Morgan. A line-up was conducted that same day, at which time Fugate did not identify Miller as the attacker. An otherwise unscheduled hearing was then arranged before Judge Box, which was held on Friday, November 15. At the close of the hearing, Miller was ordered released, and he was, in fact, released.

■ At the summary judgment hearing before this Court, Miller's counsel was asked to describe the conduct of Bordwine and Morgan that deprived Miller of his constitutional rights. Miller's counsel responded that Bordwine and Morgan failed to act promptly when confronted with evidence of Miller's innocence. Miller's counsel argued that Bordwine could have immediately sought to have Miller released by attempting to locate Judge Box on Sunday, November 10, when Fugate met Bordwine in the parking lot of the Rogers County Courthouse. Miller's counsel further argued that Morgan could have immediately sought out Judge Box on Wednesday, November 13, after Fugate failed to identify Miller as his attacker during the line-up. Miller's counsel admitted that neither Morgan or Bordwine had the power or authority to release Miller without an order from Judge Box. Miller's allegation is merely that Morgan and Bordwine failed to promptly seek Miller's release.[13]

By making his current argument, however, Miller demonstrates his lack of familiarity with the judicial process. When, after an arrest pursuant to a valid warrant, a victim approaches the authorities and advises that the arrestee is not the perpetrator of the criminal act, the authorities are not then required to secure the arrestee's immediate release. Rather, it is only sensible for the authorities to attempt to determine whether the victim may have been threatened, coerced, or bribed to make his statement,[14] and the authorities would surely seek to confirm the victim's assertion through a line-up. After assuring themselves that the victim's statement is credible or irrefutable, the authorities do not necessarily have the power to then release the arrestee without judicial authorization. Indeed, the arrest warrant commanded the Sheriff's Office to arrest Miller, detain him and bring him before Judge Box, and Miller recognizes that neither Morgan nor Bordwine had the authority to release him without an order from Judge Box. Thus, even though Fugate insisted prior to the court hearing that Miller was not the assailant, the deputies were under court order not to release him, but to bring him before Judge Box. This is precisely what they did.

Miller's reliance on *Baker*, supra, is misplaced. In that case, an arrest warrant was intended for the plaintiff's brother, but the warrant was issued in the plaintiff's name. Pursuant to the warrant, the plaintiff was arrested, over his protest, and he was detained for three days. The plaintiff brought a § 1983 claim against the sheriff, arguing that the sheriff failed to investigate the matter after the plaintiff's arrest. The Supreme Court noted that these facts may state a cause of action

13. It is not clear to the Court why Miller only selected Bordwine and Morgan as defendants herein. It appears that Fugate also advised others in the Sheriff's Office, including the undersheriff, of Miller's innocence. In any event, from the evidence presented, the Court finds that no member of the Sheriff's Office deprived Miller of his constitutional rights.

14. During the hearing on this matter before this Court, there was some argument that Morgan and Bordwine suspected that Fugate may have been bribed or coerced.

under state tort law, but they are insufficient to state a claim under § 1983, since the detention was not unconstitutional. *Id.*, 443 U.S. at 142, 146, 99 S.Ct. 2689. The Court said that § "1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. . Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.... [F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Id.* at 146, 99 S.Ct. 2689. The Supreme Court noted that the plaintiff was arrested pursuant to a valid warrant, which adhered to constitutional requirements, and further noted that, as here, the plaintiff's § 1983 claim was based solely on the sheriff's actions after the plaintiff was arrested. *Id.* at 143, 99 S.Ct. 2689. The Court stated, "Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient." *Id.* at 144, 99 S.Ct. 2689.

The Supreme Court then *assumed* that following arrest and prior to trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after a lapse of a certain amount of time deprive the accused of liberty without due process. *Id.* Miller takes this assumption and makes it the holding of the Court. The Supreme Court instead held that due process does not require that every conceivable step be taken to eliminate the possibility of convicting an innocent person. *Id.* at 145, 99 S.Ct. 2689. The Court further said that,

Given the requirements that arrest be made only on probable cause and that

one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury. *Id.* at 145–146, 99 S.Ct. 2689.

See also, *Romero v. Fay*, 45 F.3d 1472, 1481 (10th Cir.1995) (police officers' refusal to release plaintiff when he maintained his innocence does not exhibit deliberate or reckless intent to falsely imprison him, since the judicial system represents the proper forum in which to determine the innocence of an arrestee).

*Baker* resolves the § 1983 claim here. Miller was arrested pursuant to a valid warrant, and he does not contest the warrant or argue that the warrant was not based on probable cause. There is no indication that Morgan or Bordwine fabricated or concealed facts from the court when seeking or executing the warrant, and there is no suggestion that Morgan knew of the physical dissimilarities between the assailant and Miller when he sought to secure the warrant or lacked probable cause to believe that Miller was the assailant. Whatever claim Miller may have against Helm and Yuba for allegedly providing false information that led to his arrest, Miller does not contend that Morgan or Bordwine knew such information was false or contradicted, nor does Miller contend that Morgan or Bordwine purposely sought to secure an arrest warrant based on anything less than probable cause. Miller only attempts to base liability, with respect to Morgan and Bordwine, on actions they failed to take after Miller's arrest. However, as *Baker* teaches, Morgan and Bordwine were not required to

ensure that Miller was actually the guilty party—this is the duty of the court. Morgan and Bordwine acted under a warrant, authorized by a judge, directing them to arrest Miller, detain him, and bring him before the court. Morgan and Bordwine were not therefore free to release Miller once he was arrested. Pursuant to the warrant, that determination had to be made by the judge.

Moreover, Miller spent only five days in jail after Fugate began reporting the error. Of this period, two days were non-working days. Thus, Miller spent three working days in jail while Fugate's statement was investigated and arrangements could be made for an appearance before Judge Box. Additionally, there is no indication that Morgan or Bordwine purposely delayed Miller's appearance before the judge in order to make him serve additional time in jail. Morgan and Bordwine certainly have no control over the judge's docket, and November 15, two days after the line-up was conducted, may have been the earliest date on which to bring Miller before the judge. In light of the evidence presented, the Court finds that Miller's appearance before Judge Box was reasonably prompt.

As the Supreme Court noted in *Baker*, Miller "was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming ... to the requirements of the Fourth Amendment." *Baker*, 443 U.S. at 144, 99 S.Ct. 2689. "The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" *Id.* at 145, 99 S.Ct. 2689. The Court finds that the actions of Morgan and Bordwine were reasonable and proper under the Constitution and that Miller was not deprived of liberty without due process of law. The Court therefore concludes that Morgan and Bordwine did not deprive Miller of any constitutional right, and Miller's § 1983 claim must be resolved in their favor.

Since there is no diversity, the disposition of the § 1983 action against Morgan and Bordwine eliminates the federal claim at issue here. The Court therefore dismisses without prejudice Miller's remaining state claims. *See Medina v. City of Osawatomie*, 992 F.Supp. 1269, 1279 (D.Kan.1998) (whether to exercise supplemental jurisdiction over remaining state claims is within the district court's discretion, and the court is expressly authorized to decline to exercise such jurisdiction once the court dismisses all federal claims, under 28 U.S.C. § 1367(c)(3)); *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990) (notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (when federal claims are dismissed prior to trial, the balance of factors will usually point towards declining jurisdiction over state law claims).

Accordingly, the Court hereby GRANTS defendants, Morgan and Bordwine's, motion for summary judgment with respect to Miller's § 1983 claim. The Court hereby dismisses without prejudice the remaining state claims against defendants. All other pending motions filed in this case are hereby rendered MOOT by entry of this Order.

IT IS SO ORDERED.