973 F.2d 1518
 23 Fed.R.Serv.3d 934
 Craig Bryant NORTHINGTON, Plaintiff-Appellant,
v.
Carlos JACKSON, Captain; Captain Rowe; Captain Brennis;
Sergeant Motley; Dee Badley, Deputy Sheriff; Deputy Marin,
Sheriff, and Deputy Sheriffs John Doe # 1, John Doe # 2, of
Denver County Sheriff's Department; Denver County Sheriff's
Department, Defendants-Appellees.
 No. 92-1068.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 17, 1992.
 
 Craig Bryant Northington, pro se.
 Theodore S. Halaby, Joseph M. Timmins of Halaby, McCrea & Cross, Denver, Colo., for defendants-appellees, and Louis B. Bruno of Bruno, Bruno & Colin, P.C., Denver, Colo., co-counsel for defendant-appellee Captain Carlos Jackson.
 Before SEYMOUR, ANDERSON and BALDOCK, Circuit Judges.*
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiff Craig Bryant Northington appeals from the dismissal of his 42 U.S.C. 1983 and § 1985 civil rights actions against various Denver sheriff's deputies, corrections officers and the Denver Sheriff's Department. All of the allegations regard misdeeds which occurred when Mr. Northington was awaiting transfer from the Denver County Jail to the Denver County Community Corrections facility while he was serving his community corrections placement sentence. In his pro se complaint, Mr. Northington alleged: (1) that defendant Deputy Sheriff Dee Badley violated his constitutional rights when she sold him a pickup truck in violation of his community corrections placement sentence and later threatened to bring charges against him for forging a notarization on the pickup title; (2) that defendants Captain Carlos Jackson and Sergeant Motley violated his due process rights and subjected him to cruel and unusual punishment by stopping him on his way from the Denver County Jail to his community placement worksite, holding a handgun to his head, hauling him back to the Denver County jail and forcing him to telephone Deputy Badley and implicate her in illegal activities at the jail; and (3) that the remaining defendants engaged in a civil conspiracy and subjected him to cruel and unusual punishment by telling prisoners that he was a "snitch" and repeatedly moving him from cell to cell in the jail to substantiate the rumor. The defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), and the district court referred the matter to a magistrate who held a telephonic evidentiary hearing and recommended dismissal. The district court subsequently adopted the magistrate's findings and recommendations over Mr. Northington's objection and dismissed the complaint under Rule 12(b)(6). Exercising de novo review, see Miller v. Glanz, 948 F.2d 1562 (10th Cir.1991), we affirm the dismissal of the § 1983 claims against The Denver Sheriff's Department, Deputy Badley, Captain Rowe and Captain Brennis as well as all of the § 1985 civil rights conspiracy claims; however, we reverse the dismissal of the § 1983 claims against Captain Jackson, Sergeant Motley and Deputy Marin, and remand for proceedings consistent herewith.
 
 I. Pro Se Prisoner Complaints
 
 2
 As we recently expounded in Hall v. Bellmon, 935 F.2d 1106, 1108-11 (10th Cir.1991), there are three common pretrial points at which a district court may dispose of a pro se complaint such as Mr. Northington's. First, the court may dismiss the complaint as patently "frivolous or malicious" under 28 U.S.C. § 1915(d). Id. at 1108-09. See Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim is "frivolous" or "malicious" if it "is based on an "indisputably meritless legal theory." Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833. The § 1915(d) "frivolous" or "malicious" standard allows the district court to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. "Clearly baseless factual allegations are those that are 'fantastic' or 'delusional.' " Hall, 935 F.2d at 1109 (quoting Neitzke, 490 U.S. at 327-28, 109 S.Ct. at 1833). In making this determination, the district court is to weigh the allegations in favor of the in forma pauperis plaintiff. Denton v. Hernandez, --- U.S. ----, ----, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). And we review for an abuse of discretion. Id. at ----, 112 S.Ct. at 1734.[1]
 
 
 3
 Second, a district court may dismiss a pro se complaint under Rule 12(b)(6) for failure to state a claim. Under this rule, the complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The district court must construe a pro se plaintiff's complaint liberally under this standard. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972). Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall, 935 F.2d at 1110.
 
 
 4
 Third, the district court may grant summary judgment under Fed.R.Civ.P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. If the district court considers matters outside the pleadings, a 12(b)(6) motion should be treated as a motion for summary judgment, and the opposing party must be given "the notice and an opportunity to respond as provided in Rule 56." Hall, 935 F.2d at 1110-11. The Rule 56(c) provisions for notice and an opportunity to respond with affidavits are mandatory, and " '[n]oncompliance therewith deprives the court of authority to grant summary judgment.' " Id. (quoting Torres v. First State Bank of Sierra County, 550 F.2d 1255, 1257 (10th Cir.1977)).
 
 
 5
 In this circuit we allow a court authorized report and investigation by prison officials to determine whether a pro se prisoner's allegations have any factual or legal basis. These reports are referred to as Martinez reports. See id. at 1109 (citing Martinez v. Aaron, 570 F.2d 317, 318-19 (10th Cir.1978)). And telephonic evidentiary hearings, such the hearings conducted by the magistrate in this case, may serve the same purpose. Id. (citing Gee v. Estes, 829 F.2d 1005, 1007 (10th Cir.1987)). On summary judgment, a Martinez report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence. Id. at 1111. This process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn pro se prisoner complaints, not to resolve material factual issues. Id. at 1109 (citing El'Amin v. Pearce, 750 F.2d 829, 832 (10th Cir.1984); Sampley v. Ruettgers, 704 F.2d 491, 493 n. 3 (10th Cir.1983)).
 
 II. Disposition
 
 6
 We have reviewed the record and have construed Mr. Northington's complaint liberally as required by Haines, 404 U.S. at 520-21, 92 S.Ct. at 595-96, and we are not troubled with the district court's dismissal of the 42 U.S.C. § 1983 claims against the Denver Sheriff's Department, Deputy Badley, and Captains Rowe and Brennis, nor are we troubled with the dismissal of the § 1985 conspiracy counts. The claim for damages against the Department is based on an "indisputably meritless legal theory," Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833, because the Department is entitled to Eleventh Amendment Immunity. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Dismissal therefore would be proper under 28 U.S.C. § 1915(d). See McKinney v. Oklahoma, 925 F.2d 363, 365-66 (10th Cir.1991).
 
 
 7
 Regarding Deputy Badley, Mr. Northington alleges that her sale of the pickup truck and the ensuing forgery threats caused him to lose his community corrections status and therefore violated his equal protection and due process rights. It is clear from the face of the complaint, however, that he lost his community corrections status because he left his worksite, travelled to Utah and committed two armed robberies. He is now serving an habitual offender life sentence in the Colorado State Penitentiary as a result of the escape conviction stemming from this incident. Mr. Northington has not alleged any plausible constitutional violation by Deputy Badley in relation to this incident. Dismissal under Rule 12(b)(6) therefore was proper. See Conley v. Gibson, 355 U.S. at 45-46, 78 S.Ct. at 101-02.
 
 
 8
 Regarding Captains Rowe and Brennis, Jail Supervisors, Mr. Northington has not alleged personal involvement in anything other than the § 1985 conspiracy claims, and we find nothing but vague and conclusory allegations in support of such claims. We therefore hold that dismissal of the § 1985 claims against the supervisors and all of the § 1985 claims was proper under Rule 12(b)(6). See Hall, 935 F.2d at 1110.
 
 
 9
 Our trouble with this case begins with the district court's treatment of Mr. Northington's claims against Captain Jackson and Sergeant Motley. The complaint and the testimony at the evidentiary hearing reveal the following factual scenario. Captain Jackson served as an internal investigator for the Corrections Department, and he suspected that Deputy Badley was fraternizing with Mr. Northington. He therefore surveilled Mr. Northington as he left the Jail each morning and travelled to his community placement worksite. According to Captain Jackson's testimony, he stopped Mr. Northington one morning because Mr. Northington was not headed toward his worksite on the "south side" of the Denver metropolitan area. Captain Jackson further testified that he drew his service revolver as a standard procedure and, together with Sergeant Motley who arrived soon thereafter, transported Mr. Northington back to the jail and had him telephone Deputy Badley. Mr. Northington's complaint contains a different story, however. He alleges that he left the Jail and stopped to make a telephone call to find out the location of his worksite. At this point he alleges that Captain Jackson, wearing street clothes, surprised him, put a revolver to his head without identifying himself as a corrections officer, threatened to kill him, and together with Sergeant Motley transported him back to the Jail and coerced him both verbally and physically into telephoning Deputy Badley and entrapping her. Given this information, the district court adopted the magistrate's finding that "Captain Jackson did not commit assault and battery on Plaintiff [and that] Plaintiff was pulled over because he was not in the vicinity of his assigned work duty," I R. doc. 50, and dismissed the complaint.
 
 
 10
 As we have already stated, a complaint may not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley, 355 U.S. at 45-46, 78 S.Ct. at 102. The court is to accept all allegations as true and make a legal determination regarding whether the allegations state a claim. In this case the district court did not consider any potential legal issues which arise from Mr. Northington's allegations. Instead, it foreclosed legal analysis by concluding that the allegations were false, and it based this determination on Captain Jackson's testimony at the telephonic evidentiary hearing. Were the allegations in the complaint "fantastic or delusional," the court could properly have foreclosed legal analysis pursuant to its power under § 1915(d) to dismiss clearly baseless pro se complaints; however, the allegations are not "fantastic," nor are they "delusional."[2] It was error for the court to pierce the veil of the complaint and dismiss plausible allegations as untruthful under Rule 12(b)(6). See Neitzke, 490 U.S. at 327, 109 S.Ct. at 1832 ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."). Moreover, it was error for the court to base its determination on the telephonic hearing testimony without complying with Rule 56 summary judgment procedures regarding notice and opportunity to respond. See Hall, 935 F.2d at 1108-09. See also Miller, 948 F.2d at 1566 (the court should notify the parties that it is converting a Rule 12(b)(6) motion to dismiss to a Rule 56 summary judgment motion and allow the nonmovant ten days to accumulate evidence demonstrating material factual issues). Rule 56 summary judgment would lie if Mr. Northington were unable to place material facts in issue, see Hall, 935 F.2d at 1108-09, but he has not had adequate opportunity to do so.
 
 
 11
 Although the district court failed to do a legal analysis of Mr. Northington's complaint and considered matters outside the pleadings, we still must exercise de novo review and determine whether the complaint states a valid claim for relief. See Miller, 948 F.2d at 1566 ("court's error in failing to convert the motion and to comply with Rule 56 is harmless if dismissal can be justified under Rule 12(b)(6) standards without reference to matters outside of plaintiff's complaint"). To state a valid claim under § 1983 a plaintiff must allege that the defendants acted under color of state law to deprive him of a constitutional right. Ruark v. Solano, 928 F.2d 947, 949 (10th Cir.1991). We first must determine which constitutional right is alleged to have been infringed and then judge the validity of the claim "by reference to the specific standard which governs that right...." Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).
 
 
 12
 As is expected from a pro se plaintiff, Mr. Northington has not alleged constitutional violations with precision. Instead he refers generally to substantive due process and the Eighth Amendment prohibition against cruel and unusual punishment. His factual allegations, however, boil down to a claim that Captain Jackson and Sergeant Motley arbitrarily abused him by threatening to kill him and physically abusing him. Mr. Northington does not specify in his complaint exactly what type of physical abuse the corrections officers allegedly inflicted on him at the Jail; however, he does allege that Captain Jackson put a service revolver to his head and threatened to shoot when Captain Jackson and Sergeant Motley apprehended him on the street. We think this amounts to a claim that Captain Jackson with Sergeant Motley's assistance used excessive force, and excessive force claims brought by convicted prisoners fall under the rubric of the Eighth Amendment's prohibition against cruel and unusual punishment as applied to the states through the Fourteenth Amendment. See id. at 395 n. 10, 109 S.Ct. at 1871 n. 10 (wherein the Supreme Court stated that "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment") (citing Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)).
 
 
 13
 The Supreme Court recently defined the inquiry for Eighth Amendment excessive force claims by convicted prisoners:
 
 
 14
 whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [v. Albers, 475 U.S. 312, 106 S.Ct. 1078]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.
 
 
 15
 Hudson v. McMillian, --- U.S. ----, ----, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). The "malicious and sadistic" requirement applies regardless of whether the corrections officers are quelling a prison disturbance or merely trying to maintain order. Id.[3] Moreover, the standard applies regardless of whether the plaintiff has alleged significant physical injury, for the ultimate constitutional inquiry is directed at whether an " 'unnecessary and wanton infliction of pain' " has occurred. Id. at ----, 112 S.Ct. at 998-999 (quoting Whitley v. Albers, 475 U.S. at 319, 106 S.Ct. at 1084). The extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain; however, its absence does not end the inquiry. Id. --- U.S. at ----, 112 S.Ct. at 999. The court should also consider "the relationship between [the need for application of force] and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " Id. (quoting Whitley, 475 U.S. at 321, 106 S.Ct. at 1085).
 
 
 16
 De minimis applications of force are necessarily excluded from the cruel and unusual punishment inquiry. Id. --- U.S. at ----, 112 S.Ct. at 1000 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), wherein Judge Friendly wrote that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). So are verbal threats and harassment. We recognized this in Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) when we held that a sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim. Courts nevertheless have recognized that convicted prisoners have a constitutional "right to be free from the terror of instant and unexpected death" at the hands of their keepers. Burton v. Livingston, 791 F.2d 97, 100 (8th Cir.1986) (allegation that guard drew weapon, made racial epithets and threatened to shoot black prisoner in the back to prevent him from exercising free speech stated § 1983 claim for violation of First Amendment, Due Process and Equal Protection rights). See also Douglas v. Marino, 684 F.Supp. 395 (D.N.J.1988) (allegation that prison employee wielded kitchen knife and threatened to stab prisoner stated a § 1983 claim for violation of prisoner's liberty interest in personal security even though the threat was not intended to prevent prisoner from exercising constitutional rights).
 
 
 17
 The alleged terror in the Burton and Douglas cases was brought on by the brandishing of a lethal weapons, as Mr. Northington alleges in his complaint, not an idle and laughing threat as complained of in Collins. Justice Blackmun in his Hudson concurrence elaborated on the majority's rejection of a "significant injury" requirement for Eighth Amendment excessive force claims. He cited an incident of a "guard placing a revolver in an inmate's mouth and threatening to blow [the] prisoner's head off" as an unnecessary and wanton infliction of pain, albeit psychological pain rather than physical pain. --- U.S. at ----, 112 S.Ct. at 1004 (Blackmun, J., concurring) (citing Wisniewski v. Kennard, 901 F.2d 1276, 1277 (5th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990)). Justice Blackmun's example is what we have in this case, and we agree with him that such behavior is not per se de minimis and that the ensuing psychological injury may constitute pain under the Eighth Amendment excessive force standard. The Hudson majority's unequivocal rejection of a "significant injury" requirement for Eighth Amendment Excessive force claims militates in favor of this result. See id. (Blackmun, J., concurring) ("I do not read anything in the Court's opinion to limit injury cognizable under the Eighth Amendment to physical injury.... I have no doubt that to read a 'physical pain' or 'physical injury' requirement into the Eighth Amendment would be no less pernicious and without foundation than the 'significant injury' requirement we reject today.").
 
 
 18
 Mr. Northington has alleged psychological injury as a result of the alleged death threat. Furthermore, he has alleged that he was abiding by the community placement regulations and was on his way to his worksite when Captain Jackson and Sergeant Motley surprised and threatened to kill him. Under these circumstances, if true, it could be "malicious and sadistic" for a corrections officer to place a revolver to a prisoner's head and threaten to pull the trigger. Such a show of force might be reasonable and perhaps necessary if the prisoner were on escape status, but the district court's fact finding to this effect was impermissible on a 12(b)(6) motion. Accepting Mr. Northington's allegations as true, we cannot at this point say that he will not be able to prove that Captain Jackson and Sergeant Motley acted unnecessarily and wantonly for the very purpose of causing him harm in violation of the Eighth Amendment. We therefore reverse the judgment of the district court on this point.
 
 
 19
 Unfortunately our trouble with this case does not end with the excessive force claim. The district court dealt with Mr. Northington's claim against Deputy Marin in the same manner as his excessive force claim; that is, the court found his allegations untruthful. Mr. Northington alleges that Deputy Marin, a guard at the Jail, was overheard telling inmates that Mr. Northington was a "snitch." As a result of this "snitch jacket," Mr. Northington alleges that he was severely beaten on two occasions by groups of inmates and that his Eighth Amendment rights therefore were violated. The magistrate found that none of this happened, basing his finding on testimony at the telephonic hearing. And the district court dismissed the claim pursuant to Rule 12(b)(6).
 
 
 20
 As with the excessive force claim it was error for the district court to dispose of this claim pursuant to Rule 12(b)(6), but we must again determine whether the allegations state a claim. We have held that the failure to protect inmates from attacks by other inmates may rise to an Eighth Amendment violation if the prison officials conduct amounts to an obdurate and wanton disregard for the inmate's safety. Blankenship v. Meachum, 840 F.2d 741, 742 (10th Cir.1988) (citing Meriwether v. Faulkner, 821 F.2d 408, 417 (7th Cir.), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987)). See also McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992); Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 14 (1st Cir.1990). In this case we have more than an allegation of obdurate or wanton disregard for Mr. Northington's safety; we have an allegation that Deputy Marin intended to do harm to Mr. Northington by inciting inmates to beat him. When an inmate is able to prove such intent, it is as if the guard himself inflicted the beating as punishment. See McGill, 944 F.2d at 347 ("If prison officials [assigned plaintiff] so that a bigger inmate would have a better chance to rape him, then it is as if the officials inflicted that pain and humiliation themselves."). Mr. Northington's allegations, accepted as true, may state a violation of the Eighth Amendment.[4] We therefore reverse the district court's dismissal of this claim.
 
 
 21
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause therefore is ordered submitted without oral argument
 
 
 [1]
 We are exercising de novo review in this case because the district court dismissed under Rule 12(b)(6). See supra
 
 
 [2]
 Although neither the magistrate nor the district court mentioned § 1915(d) as the basis for the dismissal, both cited Mr. Northington's "delusional" behavior during the telephonic hearing as a basis for dismissing the complaint; the transcript reveals that Mr. Northington attempted to communicate with the ghost of his dead business partner. Mr. Northington may very well be unstable, but this does not mean that he is incapable of alleging facts which would merit legal relief. In interpreting which claims can be dismissed as "clearly baseless" under § 1915(d), the Neitzke Court referred to a "fantastic or delusional scenario," not a "fantastic or delusional" person. Neitzke, 490 U.S. at 328, 109 S.Ct. at 1833
 
 
 [3]
 Hudson negates the dicta in Miller, 948 F.2d at 1567, where we stated that the Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) deliberate indifference standard for Eighth Amendment conditions of confinement cases applies as well to nonemergency excessive force claims
 
 
 [4]
 Moreover, the allegations may state a claim under a substantive due process analysis. See Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (holding that mere neglect for prisoner's safety does not amount to a substantive due process violation, implying that intent to do harm would be an abuse of government power and amount to a substantive due process violation). See also McGill, 944 F.2d at 347-49 (discussing Davidson and the required mental state of prison officials in prisoner assault cases)