**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

WESLEY I. PURKEY,

   Plaintiff-Appellant,

v.

LEROY GREEN, Sheriff of
Wyandotte County, Kansas;
J.B. HOPKINS, Administrator of
Wyandotte County Jail; JONI
MUMMA, Program Director of
Wyandotte County Jail;
D.R. HERRING, Administrative
Capacity of Wyandotte County Jail;
PATTY JONES, Administrative
Capacity of Wyandotte County Jail ;
JOHN & JANE DOE, Employees of
Wyandotte County Jail; MICHAEL
DAILY, Wyandotte County Jail;
ADRIAN BARLOW, Wyandotte
County Jail; CARLA HARRIS;
CHARLES DUNLAY; (FNU)
GRIFFIN; MICHELE SESE,

   Defendants-Appellees.

No. 00-3218
(D.C. No. 99-CV-3356)
(D. Kan.)

---

**ORDER AND JUDGMENT** [*]

---

[*]  This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-appellant Wesley I. Purkey, appearing pro se and in forma pauperis, appeals from the district court's dismissal of his civil rights complaints [1] brought under 42 U.S.C. § 1983. On the same day the district court granted plaintiff's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), the court dismissed plaintiff's complaint sua sponte, apparently pursuant to either § 1915(e)(2)(B)(ii) or 28 U.S.C.§ 1915A(b)(1) (screening procedures for civil rights action in which prisoner seeks redress from governmental entity or its officers or employees). In dismissing the cause of action, the court held that plaintiff had failed to state a claim upon which relief may be granted. R. Doc.9 at 7. Our jurisdiction arises under 28 U.S.C. § 1291.

Mr. Purkey raises fifteen issues in a distended brief that is difficult to follow. Mindful of our obligation to construe his pleadings liberally, we have

---

[1] Plaintiff filed three complaints, with the second two supplementing the first complaint. *See* R. Doc. 1, 4, 5. The first was filed November 9, 1999, the second on December 22, 1999, and the third on January 24, 2000.

regrouped the claims into (A) two claims alleging denial of access to courts, (B) three claims alleging deliberate indifference to serious medical needs in violation of the Eighth Amendment, (C) an Eighth Amendment excessive force claim, (D) an Eighth Amendment inciting to violence claim , (E) a claim for unconstitutional retaliation by segregation, (F) a claim for retaliation for exercise of First Amendment rights, and (G) a claim that the court erred in requiring payment of partial filing fees.

Because under our standard of review, we must accept Mr. Purkey's well-pleaded facts as true, we conclude that the district court prematurely dismissed certain of plaintiff's claims. We therefore remand two of Mr. Purkey's claims that prison officials were deliberately indifferent to serious medical needs; his Eighth Amendment excessive force claim; and his incitement to violence claim. On remand the court should also consider the First Amendment retaliation claims, addressing all the alleged deprivations. We affirm the district court as to Mr. Purkey's claims that his right to access to courts was unconstitutionally violated; one of the Eighth Amendment claims alleging deliberate indifference to medical needs; and his claim regarding retaliatory segregation. We also reject his claim of error regarding the payment of fees.

## I. Standard of review

A dismissal under § 1915(e)(2)(B)(ii) or § 1915A for failure to state a claim is subject to de novo review. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999) (applying de novo review to dismissals under § 1915(e)); *Sanders v. Sheahan*, 198 F.3d 626, 626 (7th Cir. 1999) (noting the same standard of review for dismissal under § 1915A); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) (determining that dismissals under either section should be reviewed de novo).

> Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. In determining whether dismissal is proper, we must accept the allegations of the complaint as true and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.

*Perkins*, 165 F.3d at 806 (citation omitted).

## II. The complaint

Plaintiff was incarcerated as a pre-trial detainee at Wyandotte County Jail at the time the alleged incidents occurred. In his complaint, plaintiff alleges that in December 1998 defendant guard Davis threw a full carton of milk thirty feet across a "pod," striking plaintiff in the neck. The complaint states that the "act was unprovoked during breakfast," and that plaintiff later asked to be taken to the infirmary because he was suffering from "sharp/shooting pains and a burning sensation through the left side of [the] neck" and a "severe headache since being

-4-

struck with the full carton of milk." R. Doc. 4 at 2, 7. He alleges that he reported to the nurse that his neck injury was caused by Davis. He further claims she would not let him see a doctor without paying a standard $5.00 fee and because she could see no red mark on his neck. Plaintiff states that he refused to pay the $5.00 fee and did not see the doctor that day. He alleges, however, that being struck by the milk carton caused a "pinched nerve" in his neck for which a doctor at a state hospital (where he was temporarily transferred for a psychiatric evaluation) later prescribed an analgesic. He claims that, without examining his "pinched nerve," defendant Dr. Gamble at Wyandotte discontinued the medication despite his remonstrations that he suffered without it.

The complaint further alleges that the day following the milk-carton incident, defendant Davis told four or five African-American inmates that plaintiff was trying to cause problems for him because he had hit plaintiff with the milk carton. The inmates purportedly replied that if Davis would let plaintiff out of his "room", they would "deal with" it. *Id.* at 7. Plaintiff alleges that the following night, the same inmates confronted him before "lockdown" in the presence of a sheriff's deputy, threatening his life, and an "assaultive confrontation" began to develop. *Id.* He alleges that the next day he was locked in disciplinary segregation for six weeks as punishment for reporting the incident, and he was later transferred to another pod.

-5-

Plaintiff alleged that defendants "systematically and continuously denied me access to meaningful legal research material in reprisal for litigation plaintiff was preparing for filing in the U.S. District Court in redress of claimed-alleged violations." R. Doc. 1 at 6. He submitted a copy of a grievance challenging an alleged change in policy for allowing inmates access to legal materials. *Id.* Ex. AB(1). He alleged that defendants informed him that "his legal research rights have been terminated." *Id.* at 9. He also alleged that defendants (1) threatened disciplinary action if he persisted in requesting law books, (2) tore up his civil rights complaint and copies of grievances showing that he has exhausted administrative remedies, (3) denied him access to tape so that he could tape the documents back together, and (4) refused to photocopy his complaints or (5) to provide him with a copy of the prison's new policies and procedures for obtaining copies, thus denying him access to the courts. *See* R. Doc. 4 at 17. Plaintiff provided affidavits from other prisoners supporting his claim that defendants had torn up his complaint and supporting documents. He sued the various defendants in their official and individual capacities.

## III. Discussion

The district court did not order a *Martinez* report. *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (approving order requiring prison officials to investigate facts surrounding inmate's civil rights suit in order to construct an

administrative record from which court may decide jurisdictional issues and make determination of frivolity under § 1915). We address each claim in the same order as the district court addressed those claims. [2]

**A. Denial of access to courts claims.**

Plaintiff alleges that defendants unconstitutionally denied him access to the courts by, among other things, tearing up the initial copy of his complaint and the supporting exhibits, refusing to provide him with tape to mend the torn items, refusing to photocopy legal documents, refusing to allow him to purchase large manila envelopes for mailing his complaints to the courts, and delaying or denying him access to legal research materials. The district court dismissed these claims pursuant to *Lewis v. Casey*, 518 U.S. 343, 351 (1996), concluding that plaintiff's allegations demonstrated "inconvenience but not actual injury." R. Doc. 9 at 3.

In *Lewis*, the Supreme Court held that, to succeed on a claim of denial of access to the courts by restricting access to legal materials, an inmate must establish "actual injury," i.e., that "his efforts to pursue a legal claim" were

---

[2] Because plaintiff was a pre-trial detainee at the time of the alleged incidents, his claims technically are for violation of his substantive due process rights under the Fourteenth Amendment. *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). "In determining whether [a pretrial detainee's] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Id.*

"hindered" by the defendants' misconduct. 518 U.S. at 351. Notably, the Court offered two examples of when an inmate's efforts to pursue a legal claim would be "hindered." First, the Court noted that an inmate "might show . . . that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." *Id.* at 351. Second, the Court noted that an inmate might show "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

Applying *Lewis* to the facts alleged by plaintiff, we agree with the district court that plaintiff failed to state a claim for denial of access to the courts. It is apparent that, notwithstanding the defendants' alleged misconduct, plaintiff was able to pursue his civil rights claims by filing three separate complaints in district court and an appellate brief in this court. At worst, defendants' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of those claims. [3]

### B. Claims of deliberate indifference to serious medical needs

_____

[3] As discussed below, however, many of these same allegations support plaintiff's valid First Amendment retaliation claim.

Plaintiff's complaints allege three separate incidents in which he claims constitutional violations for failure to address his medical needs. In his first claim, he alleges that he was given tennis shoes (which he later described as "orthopedic" shoes) to wear at a state hospital facility that were taken away from him upon his return to Wyandotte. Defendant Dr. Gamble then ordered that his shoes be returned at Wyandotte after plaintiff allegedly suffered multiple infected blisters on his feet caused by the shoes issued by the jail. R. Doc. 1 at 4. He claims the nurses at Wyandotte refused to comply with Dr. Gamble's order and also refused to give him bandages or treatment ordered by Dr. Gamble for the infected blisters. *Id.*

In his second claim, he alleges that Dr. Gamble showed deliberate indifference to serious medical needs when he (1) refused to comply with recommendations made by a physician (or physicians) at the state hospital to biopsy a tumor on plaintiff's shoulder, (2) refused to examine plaintiff's alleged "pinched nerve" neck injury, and (3) discontinued the Feldene[4] prescribed for plaintiff's alleged shoulder and neck problems. R. Doc. 4 at 14-15. Plaintiff avers that he continues to "suffer persistent pain in both shoulders and neck due to his medication being discontinued." *Id.* at 15.

---

[4] We take judicial notice that Feldene is a medication with anti-inflammatory and analgesic properties. PHYSICIANS' DESK REFERENCE 2383 (53d ed. 1999).

In his third claim, he alleges that in December 1999 a nurse at Wyandotte apparently prescribed ear drops to soften wax buildup in his ears and scheduled him to have an ear irrigation five days later. He states that at the time the ear irrigation was scheduled, defendant Dr. Gamble examined his ears and throat, prescribed medication, and then stated there was no need to do the irrigation and left the room. Plaintiff states that he insisted that he needed the irrigation because his ears were "totally clogged, constant pressure and headache." R. Doc. 5 at 8. When he became adamant and refused to leave the examining room, he was issued a disciplinary "ticket" and returned to his pod. The complaint states that Dr. Gamble later denied telling staff not to perform the irrigation and that the irrigation was ultimately performed almost a month later. He claims that during this time he suffered pain when swallowing. Id. at 12.

The district court did not address these three claims individually, noting that it was apparent that plaintiff had access to medical care during the period of incarceration at Wyandotte. R. Doc. 9 at 4. The court stated that "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment," and concluded that the claims "present no more than a difference of opinion." Id. at 3-4.

To state a cognizable Eighth Amendment claim for failure to provide medical care, "'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The deliberate indifference requirement has two components: (1) an objective component requiring that the pain or deprivation be sufficiently serious, and (2) a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. *Perkins*, 165 F.3d at 809 (citing *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)).

"A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Contrary to the district court, we conclude that plaintiff's first claim amounts to more than a "difference of opinion" and is therefore cognizable under the Eighth Amendment. Liberally construing plaintiff's pleadings, he alleges that one or more nurses at Wyandotte intentionally refused to comply with Dr. Gamble's orders for treatment of infected blisters on his feet, and that, as a result, he experienced pain and suffering. These allegations, if true, would clearly demonstrate more than an "inadvertent failure to

provide adequate medical care." *Estelle*, 429 U.S. at 105. They would, instead, establish deliberate indifference to plaintiff's serious medical needs.

Although a *Martinez* report might quickly reveal that Dr. Gamble did consider the pinched nerve complaint, on this record we have only the plaintiff's allegations of complete failure to examine to go by. Deliberate indifference may include intentionally interfering with treatment or medication that has been prescribed by a physician. *See Estelle*, 429 U.S. 97 at 104-05. Thus, by alleging that Dr. Gamble refused to examine his "pinched nerve" neck injury and discontinued the Feldene prescribed by another doctor for that injury such that he continues to suffer persistent pain in those areas because the discontinuation of his medication, Mr. Purkey has stated a cause of action instead of alleging only a difference of opinion. We therefore reverse the dismissal of these two claims and remand to the district court for further proceedings.

As for the rest of plaintiff's indifference to medical needs claims, we conclude they were properly dismissed. It is apparent from plaintiff's pleadings that he was examined by Dr. Gamble regarding the shoulder tumor, and on at least one separate occasion for his ear/throat problems. It is further apparent that, on both occasions, plaintiff disagreed with Dr. Gamble's diagnoses and treatment. We are not persuaded, however, that these allegations are sufficient to establish that Dr. Gamble unnecessarily and wantonly inflicted pain on plaintiff. Rather,

the allegations demonstrate, at worst, negligent diagnoses on the part of Dr. Gamble. As we have repeatedly indicated, such allegations do not give rise to a constitutional violation. *See Perkins*, 165 F.3d at 810 ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").

## C. Cruel and unusual punishment.

The district court construed the pleadings as asserting a claim against defendant Davis for cruel and unusual punishment based upon his allegedly having struck plaintiff in the neck with a thrown milk carton. A prisoner alleging excessive force must state facts indicating that the prison official's use of force was objectively unreasonable and that the official's intent was for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). One alleging excessive force need not present facts of significant injury if he also presents facts showing that the official "maliciously and sadistically use[d] force to cause harm." *Id.* at 9. Of course, "*de minimis* uses of physical force . . . not of a sort repugnant to the conscience of mankind" are not actionable under the Eighth Amendment. *Id.* at 10 (quotations omitted). Thus, not "every malevolent touch by a prison guard" will give rise to a federal cause of action, but unnecessary blows causing bruises and swelling will, for example. *Id.* at 9-10.

-13-

Citing *Hudson,* 503 U.S. at 5, and *Whitley v. Albers*, 475 U.S. 312, 319 (1986), the district court dismissed this claim, apparently on a conclusion of *de minimis* injury as a matter of law. The court noted that "medical personnel found no markings or other signs of trauma when plaintiff was examined shortly afterward" and found "no reason to conclude this isolated event was a result of a 'wanton infliction of pain.'" R. Doc. 9 at 5.

Our review of the complaint indicates that the district court failed to take the plaintiff's well-pleaded allegations as true or to construe them in the light most favorable to plaintiff. *See Perkins*, 165 F.3d at 806. Plaintiff alleges that guard Davis's "attack" on him was unprovoked and unnecessary, giving rise to an inference that it was maliciously and sadistically intended to cause harm. *See Hudson*, 503 U.S. at 9. Although the complaint stated that medical personnel found no red marks on plaintiff's neck, it also stated that plaintiff experienced sharp and burning pain through the left side of his neck and shoulder area and a severe headache, and that the injury resulted in a pinched nerve for which a physician later prescribed Feldene. When a prisoner has been singled out for intentional punishment, he does not have to allege permanent or significant injury; the ultimate constitutional inquiry is whether an unnecessary and wanton infliction of *pain* has occurred. *See id.* at 6-7.

-14-

A *Martinez* report would shed more light on the incident and assist the court in discerning whether guard Davis intended to hit plaintiff or whether he accidently hit plaintiff while attempting to throw the milk carton to someone else, for example. At this stage of the proceedings, plaintiff has stated a cause of action against defendant Davis in his individual capacity for violation of his Fourteenth Amendment rights. We emphasize that, by arriving at that conclusion, we express no opinion on his ability to ultimately prevail on the merits or even on summary judgment.

### D. The inciting violence claim.

Plaintiff's pleadings allege that, the day following the milk-carton incident, defendant Davis incited four or five inmates to harm plaintiff for complaining about the incident. The pleadings further allege that these inmates actually confronted plaintiff and threatened to kill him. The district court concluded these allegations were subject to summary dismissal "[b]ecause the record reflect[ed] the plaintiff was placed in segregation and not injured by [the] other inmates." R. Doc. 9 at 7.

A prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992). While an "idle threat" of impending physical harm that is not carried out

will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice. *See id.* at 1524; *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980); *see also Benefield v. McDowall*, 241 F.3d 1267, 1269-70 (10th Cir. 2001) (holding that an Eighth Amendment claim had been stated that survived a defense of qualified immunity when prisoner alleged he had been labeled a "snitch" by a correctional officer).

While the fact that other officials ultimately took steps to protect the plaintiff from violence by other inmates would bar a claim against them in their individual or official capacities for allowing unconstitutional prison conditions to continue, it would not shield guard Davis from liability for creating the serious condition that required that protection in the first place. Accepting plaintiff's allegations as true, plaintiff would be able to establish that guard Davis intended to seriously harm him by inciting inmates to beat him, thereby stating a violation of the Eighth Amendment. *See Northington*, 973 F.2d at 1525 & n.4 (stating that such allegations may also support a substantive due process claim). The district court erred in dismissing plaintiff's claim against guard Davis in his individual capacity for inciting violence against plaintiff.

**E. Segregation/retaliation for filing internal grievances.**

Plaintiff alleged that, after the inmate confrontation, prison officials placed him in disciplinary segregation. R. Doc. 1 at 4, Doc. 4 at 8. Although plaintiff

alleged that his placement in segregation constituted retaliation for filing grievances, the district court dismissed the claim, holding that "changes to an inmate's housing status generally do not implicate a constitutional interest." *Id.* Doc. 9 at 6.

"The existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right" may give rise to a cause of action under § 1983. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief under 42 U.S.C. § 1997e, then punishing him for actually filing grievances by placing him in disciplinary segregation would state a claim for a both an access to courts and a First Amendment violation. *See id.* ("It is also one aspect of the First Amendment right to petition the government for redress of grievances."); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights"); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (allegation that prison officials conspired to label prisoner a "snitch" in retaliation for petitioning prison and government for redress of grievances stated cognizable claim for violation of right of access to the courts).

However, because Mr. Purkey cannot show that filing a grievance was the "but for" cause of his segregation, *see Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998), we affirm dismissal of this claim.  Certainly it was necessary to remove Mr. Purkey from the dangerous condition in which other inmates were threatening to beat him, and it was not unreasonable per se to place *him* in segregation instead of the four or five inmates who threatened him.  Therefore, we affirm the district court's dismissal of this cause of action, albeit for a different reason.  *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (noting that appellate court may affirm district court on any ground for which there is record sufficient to permit conclusion of law).

**F.  Claims of retaliation for filing suit against officers.**

Plaintiff points out that the district court did not address his First Amendment claims that county jail officials retaliated against him for attempting to file suit against jail employees by (1) denying law library privileges, (2) threatening discipline if he persisted in obtaining legal materials, (3) tearing up his first complaint, (4) screening his subsequent civil rights action and placing copies of it in his jail file, (5) refusing to sell him large manila envelopes for mailing legal actions, (6) refusing to promptly provide accounting statements required for his in forma pauperis application, and (7) calling him out of his cell late at night and threatening him because he continued to pursue his claims

against officials. Of course, we are at a disadvantage without explicit findings to review. After reviewing the complaints, however, we conclude that plaintiff has stated a cause of action for First Amendment retaliation. *See Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996) ("prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts.").

**G. Claim that court erred in requiring payment of filing fees after dismissal.**

Plaintiff asserts that the district court erred in concurrently ordering filing fees to be paid and dismissing his claims as frivolous. Section 1915(b) does not waive the filing fee, however, nor does it condition payment of the filing fee on success on the merits. It states, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Notwithstanding the district court's dismissal of plaintiff's action, he is still required to pay the full filing fee to the district court.

**H. Plaintiff's motion for order mandating return of legal materials.**

On August 23, 2000, plaintiff filed a motion requesting this court direct the warden to provide him with his legal materials that were allegedly confiscated when plaintiff was placed in administrative segregation on August 1, 2000. The record indicates that plaintiff was transferred to another correctional facility in

September and we assume that he recovered those materials upon transfer, thus mooting the request. If that assumption is erroneous, plaintiff may petition the district court for relief. Plaintiff's motion is therefore denied.

The judgment of the United States District Court for the District of Kansas is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings.

ENTERED FOR THE COURT
PER CURIAM

No. 00-3218, *Purkey v. Green*

**HENRY** , Circuit Judge, concurring and dissenting:

I respectfully dissent from that portion of the order affirming the dismissal of Mr. Purkey's claim that his access to courts was unconstitutionally violated by the intentional destruction of his complaint and supporting documents. Destruction of legal documents by prison officials can present serious constitutional problems. *See Green v. Johnson* , 977 F.2d 1383, 1389-90 (10th Cir. 1992). Tearing up an inmate's complaint and supporting documents asserting excessive force and allegedly unconstitutional conditions of confinement and refusing to photocopy complaints so that they can be properly filed clearly violates the mandate that prison officials not hinder an inmate's access to the courts. *See Lewis* , 518 U.S. at 351. The word "hinder" means "to hamper" or "to impede or delay the progress of," W EBSTER 'S II NEW RIVERSIDE UNIVERSITY DICTIONARY at 583 (1988), and thus does not signify a conclusive impediment. It would appear that prison officials may unconstitutionally interfere with access to courts not only by fatally forestalling a required pleading, but also by unreasonably delaying a filing. *See Johnson v. Avery* , 393 U.S. 483, 485-86 (1969) ("access of prisoners to the courts . . . may not be denied *or* obstructed") (emphasis added). Indeed, otherwise, officials could simply continue tearing up pleadings with impunity as long as conclusive deadlines still lay in the future. Mr. Purkey alleged actual injury, and not simple delay, by stating that his original

complaint and supporting documents were torn to pieces so that he could not file

that complaint.

No. 00-3218, Purkey v. Green

**BRISCOE**, Circuit Judge, concurring and dissenting:

I concur in part and dissent in part. Although I agree with the resolution of most of the claims at issue, I write separately to express my disagreement with the majority's decision to reverse and remand plaintiff's cruel and unusual punishment claim, and plaintiff's incitement to violence claim.

## Cruel and unusual punishment

Plaintiff alleges he was subjected to cruel and unusual punishment when he was struck in the neck with a milk carton thrown by defendant Davis. Although the district court dismissed this claim on the grounds that it was an "isolated event" that resulted in "no markings or other signs of trauma when plaintiff was examined [by medical personnel] shortly afterward," R. Doc. 9 at 5, the majority reverses that ruling and remands for further proceedings. According to the majority, the fact that plaintiff did not suffer any "permanent or significant injury" is irrelevant. Maj. Op. at 15. Instead, the majority states, "the ultimate constitutional inquiry is whether an unnecessary and wanton infliction of pain has occurred." Id. The majority directs the district court on remand to obtain a Martinez report to "discern[] whether guard Davis intended to hit plaintiff or whether he accidently hit plaintiff while attempting to throw the milk carton to someone else." Id.

In my view, it is unnecessary to decide whether defendant Davis intended to hit plaintiff with the milk carton. Even assuming that he did (and I certainly do not condone Davis' conduct if that is the case), I agree with the district court that it was, at most, a "de minimis" application of force that does not rise to the level of an Eighth Amendment violation. See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (emphasizing that the Eighth Amendment prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (citation and internal quotations omitted); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (same).

### Incitement to violence

Plaintiff alleged that four inmates, at the urging of defendant Davis, confronted and threatened to kill him for complaining about the milk carton incident. The district court dismissed the claim "[b]ecause the record reflected the plaintiff was placed in segregation and not injured by [the] other inmates." R. Doc. 9 at 7. The majority, however, reverses and remands the claim for further proceedings. In doing so, the majority states that if plaintiff's allegations are true he "would be able to establish that . . . Davis intended to

seriously harm him by inciting inmates to beat him, thereby stating a violation of the Eighth Amendment." Maj. Op. at 16.

I disagree. First and foremost, I am not convinced that plaintiff's allegations, even if true, demonstrate that he was subjected to a "substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). As the district court recognized, plaintiff's own pleadings allege that he was promptly placed into segregation after notifying prison officials about the incident and there is no indication he was thereafter subjected to threats of violence by the four inmates. Second, it is unclear to me what type of relief plaintiff would be entitled to even if he were allowed to proceed on the claim. Plaintiff is no longer housed at the Wyandotte County Jail and therefore has no legitimate claims for declaratory or injunctive relief. See Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (concluding that a prisoner's transfer or release from a jail moots his claims for declaratory relief). Further, plaintiff has not alleged any physical injury resulting from the confrontation with the four inmates. In light of 42 U.S.C. § 1997e(e), that leaves him with little more than a claim for nominal damages against defendant Davis. See Searles v. Van Bebber, 251 F.3d 869, 876, 878 (10th Cir. 2001) (concluding that § 1997e(e) limits an inmate's ability to recover for mental or emotional injuries, but does not bar recovery of nominal damages ).

-3-