F I L E D
United States Court of Appeals
Tenth Circuit

February 1, 2006

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WESLEY I. PURKEY,

      Plaintiff-Appellant,

v.

LEROY GREEN, Sheriff of
Wyandotte County, Kansas; J. B.
HOPKINS, Administrator of
Wyandotte County Jail; FLOYD
GARDNER, Classification
Administrator, Wyandotte County Jail;
HUGH BOND, Major of Security,
Wyandotte County Jail; JONI
"MUMMA" COLE, Program Director,
Wyandotte County Jail; TAMMY
ELLIOTT, Administrative Personnel,
Wyandotte County Jail; DELORES L.
HERRING, Administrative Personnel,
Wyandotte County Jail; (FNU)
DAVIS, Lieutenant/Internal Affairs,
Wyandotte County Jail; (FNU)
PIERCE, Sergeant/Security Personnel,
Wyandotte County Jail; F. ARNOLD,
Security Personnel, Wyandotte County
Jail; MICHAEL DAILEY, Wyandotte
County Jail; KARLA HARRIS;
CHARLES DUNLAY; LOREN
GRIFFIN; MICHELE SESE; TYRONE
DAVIS, Deputy Sheriff,

      Defendants-Appellees.

No. 05-3126
(D.C. No. 01-CV-3134-JAR)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **HENRY, McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this pro se prisoner civil rights action, Wesley Purkey appeals from a district court's summary judgment order. We affirm.

### BACKGROUND

In October 1998, Purkey was booked into the Wyandotte County Jail on murder and parole-violation charges. He was initially assigned to "F-pod," the jail's maximum custody unit, given the seriousness of the charges, his escape history, and his criminal history, but later given an "override[ ]" to minimum custody for good behavior. Dist. Ct. Record (R.) doc. 45 at 2. In December 1998, Purkey submitted several inmate communication forms (ICFs), claiming that he had been struck by a milk carton thrown by Deputy Sheriff Tyrone Davis

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and that Davis had later complained about Purkey to inmates, who offered to "take care of this." R. doc. 91 at 12. Davis rebuffed the offer, stating "No, the hole is full now." *Id.*

In October and November 1999, a classification technician assisted Purkey in obtaining photocopies of proposed civil rights complaints. In doing so, the technician placed a copy of one of the complaints in Purkey's classification file and consulted a county counselor regarding copying the other complaint.

Purkey sued the Wyandotte County Sheriff and numerous jail personnel, alleging, among other things, denial of access to courts, indifference to medical needs, excessive force, incitement to violence, and retaliation for submitting ICFs and filing lawsuits. The district court dismissed Purkey's lawsuit for failure to state a claim. This court affirmed in part, but reversed in part and remanded regarding the excessive force and incitement claims and portions of the indifference and retaliation claims. *Purkey v. Green*, 28 Fed. Appx. 736 (10th Cir. Aug. 17, 2001) (unpublished).

In January or February of 2000, Purkey lost his override to minimum custody and was moved to F-pod after he became "verbally abusive with the physician and nurses in the infirmary." R. doc. 45 at 2. On February 18, 2000, Purkey was transferred to the infirmary for observation, complaining of stressful

conditions in F-pod.[1]  The following day, Purkey refused to return to F-pod and was placed in the jail's B-2 segregation unit.

Because some inmates in B-2 had "flooded their cells by stopping up their toilets," R. doc. 45 at 6, the jail administrator, on March 3, 2000, ordered the "water line to the commode of each cell in B2 . . . turned off 23 hours a day," R. doc. 45, Aff. of James Eickhoff, Ex. A.  On occasion, inmates had also "smear[ed] feces on walls and other surfaces in their cells."  R. doc. 45, Aff. of James Eickhoff at 1.  While in the B-2 unit, Purkey filed numerous ICFs, complaining of unsanitary conditions, no cleaning supplies, the water restriction, his loss of commissary privileges, and being forced to shower in restraints. Although jail personnel had informed Purkey that he could leave B-2 at any time and return to F-pod, Purkey protested, stating that "due to the confrontational and escalating nature in F-pod, I chose [sic] not to continue to deal with the violence," R. doc. 51, Ex. 32.  On March 27, Purkey was restrained and carried by the "S.O.R.T. team" back to F-pod.  R. doc. 45 at 4.

---

[1]     In an ICF, Purkey noted "extreme problems from inmates who were involved in the incident stemming from November 31, 1998 - and now I am having to deal with their gang banger bullies 14 or 15 of them - I have already had 2 fights with them."  R. doc. 1, Ex. 5.

The following two days, on March 28 and 29, Purkey submitted ICFs, stating that he had been "jumped on . . . by several gangbangers." R. doc. 51, Ex. 73. In an April 4 ICF, Purkey reported that "a sequence of problems with different gang members is happening which originally stem[s] from the 1st incident with officer Davis." *Id.*, Ex. 76. On April 12, Purkey was removed from F-pod and placed in protective custody. Several weeks later, Purkey was turned over to the Kansas Department of Corrections after pleading guilty to murder and aggravated robbery.

Subsequently, Purkey filed another civil rights complaint against the Wyandotte County Sheriff and numerous jail personnel. The district court directed the defendants to submit a *Martinez* report, consolidated Purkey's two lawsuits, and appointed counsel for Purkey. After the defendants moved for summary judgment, Purkey's attorney withdrew, citing "differences as to how to proceed." R. doc. 92 at 1. Purkey filed a pro se opposition to summary judgment. Therein, Purkey expressly abandoned his medical indifference and excessive force claims. Consequently, all that remained from Purkey's first lawsuit were his claims that Deputy Sheriff Davis had incited other inmates to harm him and that he suffered retaliation for attempting to file suit against jail employees. Purkey described the claims from his second lawsuit as deriving from various defendants

(1) screening his lawsuits before photocopying them, (2) placing a copy of his lawsuit in his classification file, (3) confining him in the B-2 unit without due process and in retaliation for submitting ICFs and filing lawsuits, (4) maintaining unconstitutional conditions in B-2, and (5) forcing him back to F-pod without regard to his safety. Purkey also sought summary judgment on several of his claims.

The district court granted the defendants summary judgment and denied Purkey summary judgment. Purkey appeals.

### DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 782 (10th Cir. 2005) (quotation omitted).

Purkey argues that the district court erred in eight respects: (1) weighing evidence and making credibility determinations; (2) penalizing him for not complying with local rules; (3) analyzing his due process claim under *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that atypical and significant hardships imposed against a convicted prisoner implicate due process), rather than *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding that punitive conditions of pretrial confinement implicate due process); (4) concluding that even if confinement in the B-2 unit violated due process, jail personnel were entitled to qualified immunity; (5) concluding that the conditions in B-2 did not violate the Eighth Amendment; (6) concluding that even if Deputy Davis' conduct constituted incitement to violence, qualified immunity was available; (7) concluding that even if jail personnel were deliberately indifferent to Purkey's safety when they moved him back to F-pod, qualified immunity was available; and (8) finding no First Amendment violation in the handling of Purkey's photocopied legal documents. We have reviewed the district court's summary judgment order in light of these arguments and find no reversible error.

Accordingly, we AFFIRM for substantially the same reasons stated by the district court, and we remind Mr. Purkey of his continuing obligation to make partial payments until he has paid the filing fee in its entirety, *see* 28 U.S.C. § 1915(b).

Entered for the Court


Robert H. Henry
Circuit Judge