**Jonathan W. BAFFORD, Plaintiff,**

v.

**Michael NELSON, et al., Defendants.**

**No. 01–3224–JWL.**

United States District Court,
D. Kansas.

Dec. 18, 2002.

Johnathan William Bafford, pro se, El Dorado, KS, for Plaintiff.

Brian R. Johnson, Loren F. Snell, Jr., Office of Attorney General, Rebecca Ann Weeks, Kansas Attorney General, Topeka, KS, for Defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Jonathan W. Bafford, proceeding *pro se*, brings this 42 U.S.C. § 1983 claim alleging that defendants Michael Nelson, Kevin Vail, and Charles Simmons (the "Correctional Officials"[1]) violated his constitutional rights by subjecting him to cruel and unusual punishment in violation of the Eighth Amendment. Specifically,

---

1. The court refers to these three defendants collectively as the Correctional Officials as the defendants did in their motion for summary judgment. The phrase Correctional Officials is not to be confused with the phrase "correctional officers", which refers to prison guards (including Sergeant Vail), but does not include defendants Nelson and Simmons.

Mr. Bafford contends that Sergeant Vail inflicted excessive force by throwing him to the ground, punching him, and pulling on his nostrils, and after this initial confrontation, continuing to beat him in a shower room. Mr. Bafford argues that defendant Nelson, who was the warden at El Dorado Correctional Facility ("ECF") at the time of these events, and Charles Simmons, who was the Secretary of the Kansas Department of Corrections ("KDOC"), are liable as supervisors of Sergeant Veil.

The Correctional Officials filed a motion for summary judgment (Doc. 27) arguing that the facts do not support a violation of Mr. Bafford's Eight Amendment rights, that the Correctional Officials are immune from liability, and that defendants Nelson and Simmons cannot be held liable as supervisors of Sergeant Vail. Mr. Bafford argued, in his initial response (Doc. 30), that he could not respond adequately to the motion because the Correctional Officials failed to produce discovery as required by the court's May 3, 2002 order. In light of these allegations, the court ordered the Correctional Officials to show cause why their summary judgment motion should not be denied for failure to produce the requested materials.

The matter is currently before the court on the Correctional Officials' response to the order to show cause (Doc. 33), Mr. Bafford's self-titled motion for summary judgment (Doc. 34)[2], and the Correctional Officials' motion for summary judgment (Doc. 27). Because the Correctional Officials have complied with the court's order to voluntarily produce discovery, they have shown cause why their motion for summary judgment should not be denied and their explanation undermines the substantive basis for Mr. Bafford's motion for summary judgment.

As to the Correctional Officials' motion for summary judgment, the court grants the motion as to Mr. Bafford's claim that Sergeant Vail used excessive force when he initially restrained the plaintiff, but the court denies the motion as to Mr. Bafford's claim that Sergeant Vail used excessive force by punching Mr. Bafford in the shower room, after officers had restrained him and when he posed no apparent threat to the officers' safety. Mr. Bafford has set forth facts concerning the incident in the shower room from which, if true, a reasonable juror could conclude that Sergeant Vail used force maliciously and sadistically for the very purpose of causing harm. Additionally, the court grants the Correctional Officials' motion as to Mr. Bafford's supervisory claims against Warden Nelson and Secretary Simmons because Mr. Bafford has failed to show an affirmative link between his alleged constitutional deprivation and the acts or inaction of these supervisors.

### I. Facts

 Correctional Officials base their motion, in large part, on the facts set out in the report filed pursuant to *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978).[3] The Tenth Circuit has held that, for purposes of summary judgment, a *Martinez* report

---

2. In Mr. Bafford's self-titled motion for summary judgment, he contends that the court should enter judgment in his favor because of the Correctional Officials' failure to produce discovery. As such, the resolution of the show-cause dispute will also be determinative of Mr. Bafford's motion.

3. In *Martinez,* the Tenth Circuit approved a district court's order that prison officials investigate the facts surrounding a civil rights suit by inmates to construct "an administrative record ... to enable the trial court to decide [ ] jurisdictional issues and make a determination under [28 U.S.C.] section 1915(a)." 570 F.2d at 319.

may be treated as an affidavit, but "the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir.1997) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991)). A pro se prisoner's complaint, if verified, meaning sworn and made under penalty of perjury, is similarly treated as an affidavit and, like a *Martinez* report, may be used. as evidence at the summary judgment stage. *Id.* Here, the *Martinez* report and the allegations made in Mr. Bafford's verified complaint and documents incorporated by reference therein [4] conflict on several factual allegations concerning Sergeant Vail's use of force and for purposes of this order, the court, of course, will view the facts in the light most favorable to the plaintiff.

Mr. Bafford is an inmate incarcerated at the ECF. At all times relevant to the complaint, defendant Kevin Vail ("Sergeant Vail") was a correctional officer at ECF, defendant Michael Nelson was the warden at ECF, and defendant Charles Simmons was the Secretary for the KDOC.

Mr. Bafford bases his complaint entirely upon events that transpired on February 1, 2001. Early that morning, Correctional Officer McAllister noted in a staff referral form that Mr. Bafford was refusing his medications and appeared more unstable than normal. Officer McAllister further reported that Mr. Bafford was threatening to "bust up his T.V. and cut his own throat."

At approximately 5:00 A.M. Mr. Bafford called an officer to his cell and displayed a clear piece of plastic that was approximately 1½″ long and ½″ thick. Approximately fifteen minutes later, Mr. Bafford called another officer to his cell and brandished a clear piece of plastic that was approximately 4″ long with a pointed end. Prison officials decided that it was necessary to "shake down" Mr. Bafford's cell and remove the jagged pieces of plastic. Sergeant Vail along with Correctional Officer Hopkins removed Mr. Bafford from his cell and escorted him to a shower room. During this transfer, Mr. Bafford says that he called Sergeant Vail a "pussy" and that the Sergeant responded by stating "that's not what you said when I had my last occurance [sic] with you in # 266 when I was slamming your face into the floor."

Prison officials shook down Mr. Bafford's cell and removed a broken coffee container, a paper clip, and a coffee container lid. While Sergeant Vail and Officer Hopkins were escorting Mr. Bafford back to his cell he threatened to throw Sergeant Vail over the ledge of the two hundred run. The Correctional Officials allege that Mr. Bafford also made an aggressive move toward Sergeant Vail immediately following the verbal threat. Both parties agree that the correctional officers forced Mr. Bafford to the ground, but disagree over the amount of force used. The Correctional Officials contend that they

---

**4.** Within his verified complaint, Mr. Bafford incorporated by reference and attached his Inmate Grievance Form, which is not verified. While it is not the preferred practice, the court believes that given its duty to liberally construe Mr. Bafford's complaint, based upon his pro se status, *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) and the fact that the court may treat a verified complaint as an affidavit for purposes of summary judgment, *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir.1988), it is appropriate to consider both Mr. Bafford's verified complaint and any other document expressly incorporated by reference and attached thereto. As such, the court has considered Mr. Bafford's verified petition as well as his inmate grievance form as proper evidence under Federal Rule of Civil Procedure 56(e).

used the least amount of force necessary to restrain Mr. Bafford. Mr. Bafford, however, alleges that he was slammed to the ground and that Sergeant Vail punched him in the face and grabbed his nostrils while he was lying flat on his back. Mr. Bafford alleges that this force exceeded what was necessary for the correctional officers to restrain him.

After placing Mr. Bafford in leg irons, the correctional officers lifted him to his feet. Thereafter, Mr. Bafford told the officers that "[t]his is what you are going to get for abusing me" and spit blood in the face of Correctional Officer Hopkins. The officers again forced Mr. Bafford to the floor and placed a "spit net" over his face. The correctional officers then escorted Mr. Bafford back to the shower room. Mr. Bafford contends that while he was in the shower room Sergeant Vail punched him several times in the back of the head, causing swelling in that area.

On February 4, 2001, Mr. Bafford filed an administrative grievance concerning these events. On February 16, 2001, the Unit Team noted in its response that it was unable to verify Mr. Bafford's claims. On February 23, 2001, Warden Nelson issued a memorandum expressing his agreement with the response of the Unit Team. On March 16, 2001, Mr. Bafford mailed his grievance appeal to the Secretary of Corrections. On March 26, 2001, the Secretary concluded that the response of the Warden was appropriate and that his office was unable to find any evidence that would support the inmate's allegation. On June 7, 2001, Mr. Bafford filed the present action.

## II. Show Cause Order

On May 3, 2002 the court ordered the Correctional Officials to produce voluntarily several categories of documents and evidence by May 15, 2002.[5] On July 25, 2002, Mr. Bafford filed a motion in response to the Correctional Officials' motion for summary judgment (Doc. 30). Therein, Mr. Bafford alleged that the Correction Officials had failed to produce the materials as ordered and that the discovery was needed to respond appropriately to the summary judgment motion. On November 12, 2002, the court ordered the Correctional Officials to show cause why their summary judgment motion should not be denied for failing to produce the ordered discovery.

In their response to the notice and order to show cause, the Correctional Officials noted that all available and relevant discovery was mailed to Mr. Bafford on May 14, 2002.

Moreover, when Mr. Bafford accused the Correctional Officials of failing to produce the discovery, they once again sent him all the available discovery on August 8, 2002. Mr. Bafford has since acknowledged that he received all of the discovery except for the video tape and the KDOC policy governing preservation of video tapes. The Correctional Officials, however, have submitted evidence showing that the video and policy documents do not exist. Based upon this showing, the court finds

---

**5.** The order specifically required the Correctional Officials to produce:

(1) Any video concerning the February 1, 2001 altercation between plaintiff and defendant; (2) any photographs of plaintiff taken between February 1, 2001 and February 8, 2001; (3) any Form 260 daily segregation reports for the period February 1–8, 2001, concerning plaintiff; (4) officers chronological reports concerning the February 1, 2001 altercation; (5) any entries within plaintiff's medical file on February 1–8, 2001; and (6) any policy governing maintenance/retention of video tapes by Department of Corrections' penal facilities, including but not limited to retention of taped events which are the subject of a grievance.

that the Correctional Officials have established good cause why their motion for summary judgment should not be denied for failure to produce ordered discovery. For the same reasons, the court denies Mr. Bafford's self-titled "Motion for Summary Judgment" (Doc. 34), wherein he contends that he is entitled to judgment because of the Correctional Officials' failure to produce the ordered discovery.

### III. Defendant's Motion For Summary Judgment

The Correctional Officials' argue in their summary judgment motion that Mr. Bafford's claims fail to establish an Eighth Amendment violation and that they are entitled to immunity.

### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."

*Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

Finally, when, as here, a plaintiff is proceeding pro se, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer,* 240 F.3d 1287, 1290 (10th Cir.2001); *accord Shaffer v. Saffle,* 148 F.3d 1180, 1181 (10th Cir.1998) (citing *Hall,* 935 F.2d at 1110).

## B. Analysis

Mr. Bafford alleges that the acts of Sergeant Vail constitute cruel and unusual punishment under the Eighth Amendment. Specifically, Mr. Bafford argues that Sergeant Vail used excessive force by punching him in the face and pulling his nostrils while initially restraining him and again when he punched him in the back of the head in the shower room. Mr. Bafford claims that defendants Nelson and Simmons, as the Warden of ECF and the Secretary of KDOC respectively, are liable under § 1983 as supervisors.[6] In support of their motion for summary judgment, the Correctional Officials' argue that plaintiff's claim fails to establish an Eighth Amendment violation, that the Correctional Officials are entitled to Eleventh Amendment immunity in their official capacity and qualified immunity in their individual capacity, and that defendants Nelson and Simmons are not vicariously liable for the acts of Sergeant Vail under § 1983.

## 1. Immunity From Suit

Prior to turning to the merits of plaintiff's claims, the court must first address the issue of immunity. *Frazier v. Simmons,* 254 F.3d 1247, 1252 (10th Cir.2001) (explaining that because defendant "raises

Eleventh Amendment immunity, which is a challenge to the subject matter jurisdiction of the district court, this issue must be resolved before a court may address the merits") (internal quotations and citation omitted). The caption of Mr. Bafford's complaint specifies that the Correctional Officials are being sued in their individual capacities. "[Individual]-capacity suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. Department of Soc. Services of New York City,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The type of immunity afforded to defendants turns on whether the suit is against the defendants in their individual or official capacity. *Id.*

## a. Eleventh Amendment Immunity

▮ The Eleventh Amendment bars actions for damages against state officials in their *official capacity. Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Here, the Correctional Officials contend that the Eleventh Amendment bars Mr. Bafford's suit because a "[r]eview of [his] complaint clearly indicates that he brings suit against Defendants Vail and Nelson only in their official capacity." The court disagrees. In the caption of Mr. Bafford's complaint, he clearly indicates that defendants Vail, Nelson and Simmons are being sued in their individual capaci-

---

6. In the verified complaint, Mr. Bafford contends that Warden Nelson is responsible for employees that work under him and that Sec- retary Simmons is responsible for staff that work under him.

ties. The Eleventh Amendment does not preclude Mr. Bafford from recovering damages against state officials in their individual capacities. *Cornforth v. Univ. of Oklahoma Bd. of Regents,* 263 F.3d 1129, 1132 (10th Cir.2001) (noting that "[a]s a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment").

**b. Qualified Immunity**

█ Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of qualified immunity is to evade excessive disruption of governmental functions and to dispose of frivolous claims in the early stages of litigation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Supreme Court has reiterated that qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier,* 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Consequently, the Supreme Court has explained "that courts should resolve the 'purely legal question,' *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), raised by a qualified immunity defense 'at the earliest possible stage in litigation.'" *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

The Supreme Court has recently clarified the standards for summary judgment motions raising the qualified immunity defense. *Saucier v. Katz,* 533 U.S. 194, 201–206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As a threshold question, a court ruling upon the qualified immunity issue must consider whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right." *Id.* at 201, 121 S.Ct. 2151. If the nonmoving party fails to meet his or her burden on this threshold inquiry, the qualified immunity inquiry is finished. *Id.* If, however, a "favorable view" of the facts alleged shows the violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established" at the time of the defendant's unlawful actions. *Id.* In other words, the court assesses the objective legal reasonableness of the official's actions at the time of the alleged violation and asks whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Id.* at 202, 121 S.Ct. 2151. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201, 121 S.Ct. 2151. Applying these standards, the court must determine "whether the plaintiff has satisfied this heavy two-part burden." *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1186 (10th Cir.2001), *petition for cert. filed,* —— U.S. ——, 122 S.Ct. 1914, 152 L.Ed.2d 824, 70 U.S.L.W. 3581 (2002) (No. 01–1339) (internal quotations and citation omitted). If the plaintiff fails to meet either part of the two-part inquiry, the court is required to grant the defendant qualified immunity. *Id.* (citation omitted). Thus, the court must turn first to whether Mr. Bafford has alleged facts that prove

the Correctional Officials violated the Eighth Amendment.

### (1) Did the Correctional Officials Violate Mr. Bafford's Rights Under the Eight Amendment?

The Eighth Amendment, which applies to the states by virtue of the Fourteenth Amendment, *see Robinson v. California,* 370 U.S. 660, 662, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), prohibits the infliction of "cruel and unusual punishment" on prisoners convicted of crimes. *Clemmons v. Bohannon,* 956 F.2d 1523, 1525 (10th Cir.1992). The Supreme Court has reiterated that "the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment." *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotations and citation omitted). "What is necessary to establish an unnecessary and wanton infliction of pain ... varies according to the nature of the alleged constitutional violation." *Id.* (internal quotations and citation omitted).

■ Here, Mr. Bafford's Eighth Amendment claim arises from Sergeant Vail's alleged use of excessive force. To state a cognizable Eighth Amendment claim for use of excessive force, Mr. Bafford must state facts indicating that a prison official used force "maliciously and sadistically for the very purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 5, 112 S.Ct. 995; *see also Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir.1997). As the Supreme Court has explained, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9, 112 S.Ct. 995. "This is true whether or not significant injury is evident." *Id.* Of course, "*de minimus* uses of physical force ... not of a sort repugnant to the conscience of man-

kind" are not actionable under the Eighth Amendment. *Id.* at 9–10, 112 S.Ct. 995 (internal quotations omitted). Thus, not "every malevolent touch by a prison guard" will give rise to an Eighth Amendment claim, but the Supreme Court has held that unnecessary blows causing swelling, bruises, loosened teeth and a cracked dental plate for example, are actionable. *Id.* at 10–11, 112 S.Ct. 995. Moreover, the Supreme Court has advised that "review of a claim of the use of excessive force in a prison is to be deferential to the prison, and 'that neither the judge nor jury [may] freely substitute their judgment for that of officials who have made a considered choice.'" *Green,* 108 F.3d at 1300–01 (citing *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251(1986)). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id.*

Because Mr. Bafford contends that Sergeant Vail is directly liable while defendants Nelson and Simmons are only liable as supervisors, the court will address the two theories of liability separately.

### (a) Did Sergeant Vail use Excessive Force?

Here, Mr. Bafford has alleged that Sergeant Vail used excessive force in two separate dealings with Mr. Bafford on February 1, 2001. During the initial encounter, Mr. Bafford admits that he threatened to throw Sergeant Vail over the ledge and the uncontroverted evidence establishes that he thereafter made an aggressive move towards the Sergeant. In response, the correctional officers forced him to the ground. Mr. Bafford does not challenge the correctional officers' decision to restrain him, but instead, he alleges in

his verified complaint and documents attached thereto, that while the officers were attempting to restrain him, Sergeant Vail needlessly punched him in the nose and pulled on his nostrils, causing his nose to swell and bleed. The Correctional Officials contend that the officers applied the minimal amount of force necessary to restrain Mr. Bafford and that he was injured when his face hit the cell house wall as the correctional officers forced him to the ground. Mr. Bafford further contends that after this initial confrontation, Sergeant Vail escorted him back to the shower room and thereafter punched him several times in the back of the head causing swelling and bumping at the location of trauma. The Correctional Officials, however, appear to focus entirely on the initial encounter and do not deny or otherwise attempt to justify Mr. Bafford's account of the alleged beating that occurred in the shower room.

The pivotal question is whether these facts, viewed in the light most favorable to Mr. Bafford, give rise to an inference that Sergeant Vail used force "maliciously and sadistically for the very purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 5, 112 S.Ct. 995. Guided by this standard, the court believes Mr. Bafford's claim that Sergeant Vail used excessive force when initially restraining him must

be dismissed, but that Mr. Bafford's claim that Sergeant Vail used excessive force in the shower room must survive summary judgment.

As to the initial confrontation, neither party disputes that Sergeant Vail needed to apply force in response to Mr. Bafford's verbal and physical threat to throw him over the ledge. Mr. Bafford, instead, offers conclusory allegations that Sergeant Vail did not need to punch him or pull on his nostrils to restore discipline, but he provides no evidence that Sergeant Vail acted with malice or evil motive during the initial encounter.[7] "Such conclusory allegations are not sufficient to avoid summary judgment in a case of alleged constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir.1996). Moreover, the court is mindful of the fact that Sergeant Vail's decision to use force was "necessarily made in haste, under pressure, and ... without the luxury of a second chance." *Whitley*, 475 U.S. at 320, 106 S.Ct. 1078. This is especially true because Mr. Bafford's threats forced the correctional officers to make an immediate decision to restore discipline. *See Cruz v. Webb*, 211 F.3d 1277, 2000 WL 531626, at *2 (10th Cir. May 3, 2000). Quite simply, Sergeant Vail and the other correctional officers responded to a very real and imminent threat to their safety and well-being. The fact that they inflicted pain upon Mr.

---

7. Mr. Bafford does contend that before Sergeant Vail escorted him to the shower room, he called Sergeant Vail a "pussy" and that the Sergeant responded by saying "thats [sic] not what you [referring to Mr. Bafford] said ... when I was slamming your face into the floor" on a prior occasion. Sergeant Vail, however, did not use force against Mr. Bafford in response to this statement. Instead, he and the other officers simply escorted Mr. Bafford to the shower room where he stayed until prison officials could shake down his cell and search his person. Sergeant Vail did not use any force until he was escorting Mr.

Bafford back to his cell. Even then, the Sergeant did not use any force until after Mr. Bafford threatened to throw him over the ledge and made an aggressive move toward him. Given the amount of time that transpired between the Sergeant's response to being called a derogatory name and the initial encounter, combined with the intervening fact that Mr. Bafford verbally and physically threatened Sergeant Vail, no reasonable juror could find, based upon Sergeant Vail's statement, that he used force maliciously with the intent to injure Mr. Bafford.

Bafford in response to this threat "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). As such, even viewed in the light most favorable to Mr. Bafford, the evidence does not give rise to an inference that Sergeant Vail wantonly inflicted pain upon Mr. Bafford. As such, the Correctional Officials' motion for summary judgment is granted as to this initial use of force.

 This initial confrontation, however, is not the only alleged use of force. Mr. Bafford has argued that Sergeant Vail beat him in the shower room, after Mr. Bafford was restrained and posed no apparent disciplinary threat. The Correctional Officials have offered no innocent explanation or otherwise justified this alleged use of force.[8] In similar, though admittedly not identical, circumstances the Tenth Circuit has found this type of evidence sufficient to create a genuine issue of material fact. *See e.g., Lowe v. Sockey*, 36 Fed. Appx. 353, 357–358, 2002 WL 491731, at *4 (10th Cir.2002) (finding that whether correctional officials used excessive force was a disputed issue of material fact given pro se prisoner's statements that officials started a struggle with him, struck and beat him while he was restrained on the floor, beat him again before taking him to lock up, roughed him up while he was being held by an officer, etc.); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996) (finding that a reasonable jury could conclude that the guards' behavior fell into the category of malicious and sadistic because the guards beat him while shouting racial epithets after he had already fallen to the ground and was restrained, but affirming dismissal based upon prisoner's inability to identify the prison guards).

In light of this evidence and the court's duty to construe the facts in the light most favorable to Mr. Bafford, the evidence could establish a reasonable inference that Sergeant Vail applied force unnecessarily, excessively or wantonly in the shower room. Therefore, the court must deny the Correctional Officials' motion to dismiss Mr. Bafford's claim against Sergeant Vail, in his individual capacity, as to his alleged use of force in the shower room.[9]

---

8. The court does not suggest that such an explanation does not exist, nor does the court admonish defense counsel for failing to specifically address the second alleged use of force in the shower room. Mr. Bafford described this incident in his inmate grievance form, which he attached and incorporated into to his verified complaint, but the complaint itself contained no description of the use of force in the shower room. As explained above, however, the court finds that it must consider the verified petition and the exhibits incorporated and attached thereto as Rule 56 evidence in this case.

9. Correctional Officials contend that Mr. Bafford's injury was *de minimus* because he suffered no prolonged bleeding, the injury did not require stitches, none of his bones were broken, and the physician's report did not indicate he had swelling in the back of the head. As noted above, "[d]e minimis applications of force are necessarily excluded from the cruel and unusual punishment inquiry." *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir.1992), and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir.2001) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). "However, 'the ultimate constitutional inquiry' is directed at whether an 'unnecessary and wanton infliction of pain' has occurred.'" *Id.* (quoting *Northington*, 973 F.2d at 1523). "If so, there is no need for a plaintiff to allege significant and lasting injuries." *Id.* Mr. Bafford alleges that he

*Whitley,* 475 U.S. at 322, 106 S.Ct. 1078 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reasonable inference of wantonness in the infliction of pain under the [above] standard . . ., the case should not go to the jury."); *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000) ("[A] prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence").

**(b) Did Warden Nelson and/or Secretary Simmons Violate Mr. Bafford's Constitutional Rights as Supervisors of Sergeant Vail?**

▮ Plaintiff named the Warden of ECF, Michael Nelson, and the Secretary of Corrections, Charles Simmons, as defendants and seeks to hold them liable for the acts of Sergeant Vail. Though supervisory officials may, in some instances, be liable for the acts of their employees, "there is no concept of strict supervisor liability under section 1983." *Ruark v. Solano,* 928 F.2d 947, 950 (10th Cir.1991), *overruled on other grounds, Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2179–82, 135 L.Ed.2d 606 (1996) (internal quotations omitted). To establish a cognizable claim under § 1983 against a supervisor, the plaintiff must establish "that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Holland ex rel. Overdorff v. Harrington,*

268 F.3d 1179, 1187 (10th Cir.2001) (citation omitted).

Here, Mr. Bafford has failed to allege or offer evidence that the acts of Warden Nelson or Secretary Simmons caused his constitutional deprivation. Specifically, Mr. Bafford has not suggested that the supervisors actually participated in the use of force, acquiesced to the acts of Sergeant Vail, or established or utilized a policy or custom that permitted the alleged constitutional deprivation. *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir.1996) (noting that supervisor status by itself is insufficient to support liability and that personal participation is an essential allegation). Instead, Mr. Bafford simply concludes that these defendants are "responsible for employees that work under" them. Unfortunately for Mr. Bafford, that conclusion is incorrect and cannot support a claim under § 1983. *Schwartz v. Zavaras,* 96 F.3d 1453, 1996 WL 494413, at *2 (10th Cir. Aug.27, 1996) (holding that failure to allege personal involvement or knowledge in the constitutional deprivation warrants summary judgment on respondeat superior claims).

In sum, Mr. Bafford fails to allege how Warden Nelson or Secretary Simmons' personal participation, exercise or direction, or failure to supervise caused plaintiff's constitutional deprivation. Absent such an affirmative link, a defendant is not liable under a theory of respondeat superior. *Worrell v. Henry,* 219 F.3d 1197, 1214 (10th Cir.2000) (citations excluded). Accordingly, the Correctional Officials' motion for summary judgment is

---

suffered swelling and lumps to the back of his head as a result of the use of force. The physician's report confirms that Mr. Bafford had swelling to his forehead and that the physician treated him with Motrin. The report does not indicate any absence of swelling to the back of the head, but instead, is silent

on that issue. Mr. Bafford's allegations, therefore, are sufficient to satisfy the test for excessive use of force, especially considering that a reasonable juror could conclude that Sergeant Vail applied unnecessary and wanton infliction of pain.

granted as to Mr. Bafford's supervisory claim against Warden Nelson and Secretary Simmons.[10]

## (2) Was the Law Clearly Established at the Time of the Alleged Incident?

Having determined as a preliminary matter that a reasonable jury could conclude, based upon the facts construed in the light most favorable to Mr. Bafford, that Sergeant Vail's use of force in the shower room violated the Eighth Amendment, the court must determine whether Mr. Bafford's rights were "clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (explaining that "the next sequential step is to ask whether the right was clearly established"). The Eighth Amendment's guarantee against cruel and unusual punishment has been part of the Constitution since 1791. The Supreme Court concluded that the Eighth Amendment precludes the use of excessive force and, consequently, the right is defined by case law. On February 1, 2001(the date of the alleged incident), the courts had clearly established the standard for determining Eight Amendment violations on the theory of excessive force. Since at least 1986, the courts in these situations have examined "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," *see Hudson*, 503 U.S. at 6, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

The inquiry as to "clearly established" rights, however, is more specific because it requires the court to determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. In other words, as the Court previously stated, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Of course, there does not need to be a case in which "the very action in question has previously been held unlawful," however, "in the light of pre-existing law[,] the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. The Tenth Circuit has stated that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir.2001) (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)). Thus, the court must determine, in light of the specific context of this case, whether on February 1, 2001 a reasonable corrections official would have understood that the conduct as described in Mr. Bafford's verified complaint violated his Eighth Amendment rights.

■ The court concludes that Mr. Bafford's Eighth Amendment right was

---

**10.** Though the Correctional Officials focus upon the claim against Warden Nelson and do not expressly discuss the claim against Secretary Simmons, Mr. Bafford asserts the same theory of strict supervisor liability against both officials. If Mr. Bafford believes that he has in fact properly stated a viable theory of liability (as described in this section) against Warden Nelson or Secretary Simmons, his remedy lies with a motion to reconsider under D. Kan. Rule 7.3, which must be filed no later than 10 days after this order is filed.

"clearly established" at the time of these alleged events. Qualified immunity functions to protect prison officials from the "sometimes hazy border between excessive and acceptable force, . . . and to ensure that before they are subject to suit, [officials] are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151 (applying the "clearly established" standard to a Fourth Amendment excessive force case) (internal quotations and citation omitted). It serves to grant " 'officers immunity for reasonable mistakes as to the legality of their actions,' and in excessive force cases, 'in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.' " *Harrington*, 268 F.3d at 1196 (quoting *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151). A reasonable mistake of law exists where the circumstances "disclose substantial grounds for the officer to have concluded he [or she] had legitimate justification under the law for acting as he [or she] did." *Saucier*, 533 U.S. at 208, 121 S.Ct. 2151.

Here, Mr. Bafford asserts that Sergeant Vail applied excessive force by beating him after he was restrained and posed no apparent threat in a shower room. The Correctional Officials do not, however, argue that the law was not "clearly established" at the time these events occurred and this is not a situation where substantial grounds exist for a reasonable corrections officer to conclude that there was legitimate justification for intentionally punching Mr. Bafford in the back of the head after officers had successfully restrained him. Instead, the central issue is whether Mr. Bafford's representations are accurate. If his version of the facts are true,

as we must assume they are for purposes of this motion, then Sergeant Vail violated a "clearly established" right. Consequently, Sergeant Vail is not entitled to qualified immunity and the Correctional Officials' motion for summary judgment must be denied on this claim.[11]

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Correctional Officials have shown cause why their motion for summary judgment should not be denied. Because the Correctional Officials have produced all available discovery, Mr. Bafford's motion for summary judgment (Doc. 30) is denied. The Correctional Officials' motion for summary judgment (Doc. 27) is granted in part and denied in part. Specifically, the motion is granted as to Mr. Bafford's claim that Sergeant Vail used excessive force when he initially restrained Mr. Bafford in response to his verbal and physical threats. The motion is denied as to Mr. Bafford's claim that Sergeant Vail used excessive force by punching him in the back of the head in the shower room, after the correctional officers had restrained Mr. Bafford and when he posed no apparent threat to officer safety. Finally, the motion is granted as to Mr. Bafford's supervisory claims against Warden Nelson and Secretary Simmons.

**IT IS FURTHER ORDERED THAT** the referral to Magistrate Judge Walter is hereby withdrawn and that this case be referred to Magistrate Judge O'Hara for further pretrial purposes.

---

**11.** Because the court finds that a reasonable juror could conclude that Sergeant Vail violated Mr. Bafford's rights under the Eighth Amendment, the Correctional Officials' argument that he failed to state a claim against Sergeant Vail must be denied.